No. 2--04--0434

_____filed 05/17/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03--CM--3009 |
| MARK S. MAJKA, | ) ) ) | Honorable Richard J. Larson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

Defendant, Mark S. Majka, appeals from his conviction of violation of an order of protection (720 ILCS 5/12--30 (West 2002)). He contends that the State failed to prove him guilty beyond a reasonable doubt because (1) the testimony of the complainant, Cherie Majka (Cherie), should not have been credited and (2) he was entitled to an inference that certain potential evidence, absent from the State's case because the police did not investigate, would have been favorable to him. He also contends that a comment by the State at <u>voir</u> <u>dire</u> that " 'it doesn't have to prove its case 100%' " was reversible error. Further, in response to the State's assertion that we must resolve against him certain questions arising from the purported incompleteness of his bystander's report, defendant argues that the court violated his equal protection rights when it refused to provide him with a court reporter for the trial. Finally, he asserts that he was entitled to a $5-a-day credit against a fine for two days he spent in jail before the trial.

We do not resolve the issue of whether defendant had an equal protection right to a court reporter. However, for the sake of argument, we assume that a defendant has a right to a complete transcript unless the State can show that the defendant will have as effective an appeal with a substitute such as a bystander's report as would a defendant who could pay for a court reporter. We therefore place the burden on the State of showing that defendant's bystander's report is sufficient to allow us to properly consider the issues defendant raises. We conclude that the bystander's report is sufficient to allow full review of each issue. We hold that nothing in Cherie's testimony made it inherently incredible, that defendant was not entitled to an inference that uninvestigated potential evidence would have supported his position, and that the State's comments regarding the burden of proof were not plain error. We thus affirm defendant's conviction. Moreover, because neither the law nor the facts are in dispute regarding defendant's entitlement to a $5-a-day credit, we order that he be awarded a credit of $10 against his fine.

## I. BACKGROUND

The State charged defendant with a violation of an order of protection (720 ILCS 5/12--30 (West 2002)) and criminal damage to property (720 ILCS 5/21--1(1)(a) (West 2002)), both misdemeanors. According to a bystander's report prepared by defense counsel and approved by the court, defendant moved at the start of his trial to have a court reporter transcribe the proceedings. The court denied the motion because the chief judge advised it that court reporters would not be assigned to misdemeanor trials. We therefore take this summary of facts from the bystander's report.

Defendant demanded a jury trial. During voir dire, the State commented to the panel that " 'it doesn't have to prove its case 100%.' " Defendant objected on the grounds that the State was

trying to diminish its burden of proof, but the court overruled the objection. The bystander's report does not give other details of <u>voir</u> <u>dire</u>. In particular, it does not say whether defendant challenged any venire members for cause or used any of his peremptory challenges.

Cheri Majka, defendant's estranged wife, testified for the State. She identified an order of protection that barred defendant from entering her house. On May 23, 2003, at around 1:15 p.m., she was upstairs in her house when she heard a beeping that she recognized as the sound defendant's van made while in reverse. Looking out, she saw defendant's van. She went downstairs and saw defendant through a window in the front door. They spoke. She then called 911. She went to the kitchen and was there when someone, whom she assumed to be defendant, kicked down the front door. She called 911 again while the door was being kicked in. She next saw defendant in the foyer. He grabbed a mirror and walked out of the house. She estimated that defendant was outside the door for about five minutes and in the house for about one minute. Cherie identified two digital photographs of the door and its frame as accurately showing their condition after defendant left. The photographs showed the doorframe splintered and shoe prints on the door.

On cross-examination, Cherie testified that she had filed for divorce against defendant and that custody of the couple's children was in dispute. Further, she stated that she had called the police to report defendant violating the order of protection more than once before. She asserted that she did not know whether defendant's being found guilty would aid her in her custody battle.

Officer Gerald Moisa, an Aurora police officer who responded to Cherie's 911 call, also testified. He spoke with Cherie and, based on her deportment, he judged that she was afraid, nervous, and angry. He examined the door that Cherie said that defendant had kicked down.

The jamb was splintered, and the door would not close fully or lock. On cross-examination, Moisa admitted that he had noticed potential witnesses to the events Cherie described, men who were near the house doing landscaping work, but, when he discovered that the men spoke only Spanish, he did not question them further. Moisa said that Batavia police officers had arrested defendant, who lived in that town. To the best of Moisa's knowledge, they did not look for the mirror in defendant's van. On redirect, Moisa explained that the Batavia officers arrested defendant five or six minutes after Moisa contacted dispatch; he estimated that it is eight or nine miles from Cherie's house to Batavia.

Defendant testified that he had been a federally licenced firearms dealer for 18 years and had lost his business when he had to give up possession of his firearms because of the order of protection. He testified that the Batavia police had arrested him about 500 feet from the door of his apartment and that it was 16 to 20 miles from his apartment in Batavia to Cherie's house. He denied being at Cherie's house on May 23. Further, he had been in an automobile accident sometime before his arrest, was in constant pain from his injuries, and needed a cane because of equilibrium problems. Cherie, called as a rebuttal witness, said that she was aware of defendant's accident. She said that defendant "did not drive after the accident."

The bystander's report does not describe the instructions given the jury, but the record contains copies of the jury instructions, including standard instructions to the effect that the State has the burden of proving a defendant's guilt beyond a reasonable doubt. The jury found defendant guilty of violating the order of protection, and the court sentenced him to a year of supervision and a fine of $240. (The record shows that the State nolle-prossed the criminal damage to property charge.) Defendant appealed. The record does not include any posttrial motion.

On appeal, defendant asserts that Cherie's testimony was incredible because of her bias against him, because her claim that he kicked down the door was inconsistent with his physical condition, and because it was not plausible that he smashed down a door and then only took a mirror. Further, he asserts that, because the State failed to present the testimony of the landscapers and failed to search his vehicle for the mirror, he is entitled to an inference that such evidence would have been unfavorable to the State. Finally, he contends that the State's comment at voir dire that " 'it doesn't have to prove its case 100%' " was reversible error. The State responds that where the appellant has not presented an adequate record to show otherwise, the reviewing court should presume that the trial court acted properly. It suggests that, because of the absence of a transcript, no evidence exists that the court had not admonished the jury regarding reasonable doubt. Defendant has moved for leave to file a supplemental brief, and this court has granted the motion. Defendant now asserts that he was denied equal protection because the court would not assign a court reporter to the trial. He asserts that, because a nonindigent defendant could have paid to have a court reporter present, the court's refusal to provide a court reporter created a harm limited to indigents.

## II. ANALYSIS

Initially, we must consider the authority relating to defendant's right to a court reporter, as the applicable law can shift certain burdens of persuasion. The leading case on an indigent defendant's right to a transcript is Mayer v. City of Chicago, 404 U.S. 189, 195, 30 L. Ed. 2d 372, 378-79, 92 S. Ct. 410, 415 (1971). In Mayer, the Supreme Court held that an indigent misdemeanant is in some circumstances entitled to a free, full transcript of his or her trial. At the time Mayer was decided, Illinois courts assigned reporters to misdemeanor trials (Mayer, 404 U.S. at 193-94, 30 L. Ed. 2d at 377-78, 92 S. Ct. at 414), but the operative version of Illinois's supreme court rules did not

provide for free transcripts for indigent misdemeanants (Mayer, 404 U.S. at 191, 30 L. Ed. 2d at 376, 92 S. Ct. at 413; 36 Ill. 2d R. 607(b)). The Court held that such a policy violated an indigent's equal protection rights. It disapproved of any rule or policy that created significant barriers to an effective appeal for an indigent that were not faced by a nonindigent defendant, stating:

"[T]he State must provide a full verbatim record where that is necessary to assure the indigent as effective an appeal as would be available to the defendant with resources to pay his own way. Moreover, where the grounds of appeal, as in this case [claims of insufficient evidence and prosecutorial misconduct], make out a colorable need for a complete transcript, the burden is on the State to show that only a portion of the transcript or an 'alternative' [agreed statement of facts or bystander's report] will suffice for an effective appeal on those grounds." Mayer, 404 U.S. at 195, 30 L. Ed. 2d at 378, 92 S. Ct. at 415.

Defendant therefore argues that, because he has made and supported claims of error concerning the sufficiency of the evidence and prosecutorial misconduct, the burden is on the State to show that a bystander's report is a sufficient substitute for a verbatim transcript. He asserts that the difference between the circumstances in Mayer, where a court reporter was present but the rule did not provide for free transcripts, and this one, where the court does not assign a court reporter, is not significant because a defendant with money could pay a reporter to be present.

We acknowledge the force of the argument that Mayer is applicable when indigent defendants cannot get transcripts because court reporters are not assigned, just as it is when they cannot get transcripts because they are not free. We also recognize the consequences of holding that equal protection considerations require the provision of a transcript when no court reporter was present. In Mayer, the cure for the problem was to provide a transcript of the already-recorded trial. Where no reporter was present, the only possible relief would be a new trial. However, we need not

decide the issue at this time. We assume for the sake of argument that, as defendant claims, Mayer applies. We conclude that the bystander's report here is sufficiently detailed to allow the same review of defendant's claims as would have occurred had a verbatim transcript been available.

Before we can apply Mayer to the facts of this case, we must first address a question that arises from the State's suggestion that we can draw inferences against defendant from flaws in the bystander's report. In particular, it asserts that we can assume that the court admonished the jury regarding reasonable doubt. This suggestion requires us to decide the extent to which we will assume a bystander's report is complete, an issue that affects the degree to which a bystander's report can adequately substitute for a verbatim transcript.

Under Supreme Court Rule 323(c) (166 Ill. 2d R. 323(c)), when no verbatim transcript is available, a party can prepare a proposed report of proceedings "from the best available sources, including recollection." The party that has prepared the proposed report must serve it on the other parties, and they may in turn prepare proposed amendments or an alternative report. The trial court reviews the submissions and certifies the report to the extent that it finds the report accurate. Two points are clear from this. First, if a proper report can be prepared purely from recollection, the rule must allow reports that are not close equivalents of verbatim transcripts. As a matter of ordinary human limitations, reports prepared from recollection will be significantly less detailed and precise. Second, once one party chooses to submit a proposed report, both parties bear responsibility for the report's accuracy.

Generally, any doubts arising from an incomplete record will be resolved against the appellant. E.g., People v. Ortiz, 313 Ill. App. 3d 896, 900 (2000). This principle is commonly referred to as the Foutch principle. See Foutch v O'Bryant, 99 Ill. 2d 389, 391-92 (1984). However,

we cannot apply that principle so broadly as to render a bystander's report worthless; we must assume a bystander's report is materially complete on the points it addresses.

We find little discussion in the case law of the assumptions a court should apply in considering a bystander's report. Our research discloses only People v. Berg, 182 Ill. App. 3d 431 (1989), which presumes that the author of a report has not withheld relevant information. In Berg, a defendant argued that his conviction of driving with a revoked license was improper because he did not receive a speedy trial. Berg, 182 Ill. App. 3d at 431-32. The court had continued his trial because, according to a bystander's report prepared by the defendant, a necessary witness for the State was unavailable. Berg, 182 Ill. App. 3d at 432. The report provided no other information on the subject. Berg, 182 Ill. App. 3d at 432. The State argued the record was incomplete because the reviewing court would have excused the delay of the hearing if the officer had a good reason for not being present and the bystander's report did not positively exclude the possibility that the State presented a proper excuse. Berg, 182 Ill. App. 3d at 432. The appellate court ruled that the report did not mention an excuse and, absent any indication that the defendant had deliberately excluded evidence, it would assume that the State presented no excuse. It noted the State's ability to propose amendments to a bystander's report (Berg, 182 Ill. App. 3d at 432), implying that, if the State believed that a description of events in a proposed report of proceedings was materially incomplete, it should have proposed an amendment.

We deem a rule like that in Berg to be a necessity if any case with factual issues is to be reviewable using a bystander's report. If we were always to assume that a report has left out some fact critical to the trial court's decision, a report would rarely help an appellant and therefore would almost never allow an effective appeal. Suppose, for instance, that a defendant submits a bystander's report describing the evidence presented at his trial and claims that the evidence was insufficient to

support a guilty verdict, and we deem that the evidence, as represented in the report, supports that claim. Were we then to apply the Foutch principle (based on the inherent limitations of a bystander's report) to decide that the State must have put on some piece of evidence not mentioned in the report but sufficient to support the verdict, the report would be pointless. In order for a report to have any value, we must assume that the court or an opposing party will correct any misleading omission in a proposed report. An omission is misleading if it would tend to counter the effect of something included in the report. It is not misleading if it is simply an area on which the report does not touch.

We note that the supreme court took a similar approach to a partial record in People v. Smith, 106 Ill. 2d 327 (1985). The Smith court held that a defendant claiming lack of a proper jury waiver-- which was not then required to be in writing--need provide only a transcript of the proceeding at which the common-law record indicates that the trial court accepted the waiver. Smith, 106 Ill. 2d at 335. If the State contends that the court accepted the waiver at some other time, the burden is on it to supplement the record to show this. Smith, 106 Ill. 2d at 335. Thus, despite the burden on the appellant to provide a record complete enough for review, the appellee cannot force the appellant to provide an exhaustive record by speculating that a partial record is misleading. The appellee has the burden of providing a record that shows that there is substance to its speculations.

With this in mind, we apply the framework in Mayer to this case. We deem that the grounds of appeal stated by defendant make out a colorable need for a complete transcript. For instance, to decide whether a witness's testimony was so unsatisfactory as to be incapable of supporting a conviction, as defendant suggests Cherie's was, we would ordinarily review all of that witness's testimony. See, e.g., People v. Schott, 145 Ill. 2d 188 (1991). Because defendant has made a colorable showing of a need for a complete transcript, under Mayer, the burden shifts to the State to show that the bystander's report was adequate.

Here, the State accepted the bystander's report that defendant submitted and the judge certified. This raises an obvious question: can the State meet its burden under <u>Mayer</u> based solely on defendant's bystander's report? We see no reason it cannot. We hold that a bystander's report that a defendant submitted can be sufficient to satisfy the State's burden under <u>Mayer</u>. When a defendant raises a <u>Mayer</u> issue, the State can still respond with argument supporting the record's sufficiency. However, the only way we can see for a court to decide if a substitute for a verbatim transcript is adequate is to examine the proposed substitute in light of the issues raised by the defendant. If the court can review a defendant's claim based on the substitute, and no issues exist where a more comprehensive record could possibly change the outcome in the defendant's favor, then the record is sufficient. That the defendant provided the substitute does not change the effectiveness of his or her appeal.

We now have the background to consider defendant's claims of trial error. However, the <u>Mayer</u> framework makes clear that, along with the substance of each claim, we must also consider the <u>Mayer</u> issue, that is, whether the bystander's report is an adequate substitute for a verbatim transcript. Our supreme court has held that the constitution does not require some particular degree of detail for a substitute to be permissible. Instead, it requires "a record of sufficient completeness to permit proper consideration of the specific claims made by the defendant." <u>People v. Hopping</u>, 60 Ill. 2d 246, 251-52 (1975). Thus, we must consider claim by claim whether the bystander's report provides the kind of detail that permits full review.

We turn first to defendant's claim that Cherie's testimony should not have been credited. That claim is clearly meritless because the purported flaws in her testimony are not of the kind that would prevent a jury from properly deciding that she was credible. A reviewing court may reject testimony as unbelievable, "but only where the record evidence compels the conclusion that no

reasonable person could accept it beyond a reasonable doubt." People v. Cunningham, 212 Ill. 2d 274, 280 (2004). Defendant argues that Cherie's testimony was not credible because (1) she was biased due to the bitter divorce proceedings, (2) the claim that defendant kicked down her door but then only took a mirror was contrary to human experience, and (3) it was physically impossible for defendant to kick down the door because his injuries from a car accident had disabled him. None of these are bases for rejecting the testimony. First, the effect of any bias or interest on the credibility of a witness is solely for the trier of fact to decide. People v. Traylor, 201 Ill. App. 3d 86, 90 (1990). Second, although the behavior of defendant described by Cherie was apparently irrational, it is not contrary to human experience that people having domestic problems behave irrationally. Third, defendant's testimony that he was physically unable to kick the door down simply created an evidentiary conflict with Cherie's testimony indicating that he had done so. Conflicts in the evidence are for the trier of fact to resolve. People v. Kelchner, 221 Ill. App. 3d 25, 30 (1991). Moreover, defendant also was an interested witness, and the jury was free to disbelieve him. See People v. Almo, 108 Ill. 2d 54, 67 (1985); People v. Velasco, 184 Ill. App. 3d 618, 635 (1989).

A verbatim transcript would not have aided defendant in pursuing this issue on appeal. The purported bases on which defendant asks us to find Cherie's testimony unbelievable are not of the kind that would allow us to reach such a conclusion. Greater detail would not alter their fundamental inadequacy.

Defendant next argues that he is entitled to an inference, as a matter of law, that the Spanish-speaking landscapers' testimony would have been favorable to him and that a search of his vehicle would have failed to find the mirror. No authority supports such an entitlement. Defendant suggests that, where law enforcement officers have failed to investigate potential evidence, a defendant is entitled to an inference that the evidence would have supported his or her innocence. However, no

general right exists to an inference that potential evidence would help a defendant based on the State's failure to present that evidence. See, e.g., People v. Scott, 38 Ill. 2d 302, 306 (1967); People v. Smith, 237 Ill. App. 3d 901, 909 (1992). The case cited by defendant in support of his argument, People v. Johnson, 191 Ill. App. 3d 940, 945 (1989), merely follows People v. Guido, 25 Ill. 2d 204, 209 (1962), in holding that the State's unexplained failure to call an eyewitness informant gives rise to an inference that the informant's testimony would be unfavorable to the State. In Johnson the potential witness was present at all the critical stages of the drug transaction that resulted in the conviction. Johnson, 191 Ill. App. 3d at 941-42. The State obviously understood the informant's importance in the transaction; the inference against the State arose because it was reasonable to conclude that the State did not present the informant because it knew his testimony would not be favorable. The same kind of conclusion is not possible when the evidence suggests that the State could not know what the evidence would have been. The failure of defendant's argument on this issue is purely one of law. Therefore, a verbatim transcript could not affect our review of this issue.

Defendant's final claim is that he was denied a fair trial because the State told the venire that " 'it doesn't have to prove its case 100%.' " He contends that the State's comment was error both as an attempt to lessen the State's burden of proof and as a prohibited definition of "reasonable doubt." Because defendant did not raise this issue in a posttrial motion, we consider it under the plain error doctrine and conclude that the doctrine does not apply.

To preserve for review a claim of error based on an improper comment by the State, a defendant must both object to the comment at the time it is made and renew the objection in a posttrial motion. People v. Flynn, 341 Ill. App. 3d 813, 828 (2003). Defendant did object to the comment when it was made, but he did not renew the objection in a posttrial motion. Therefore, our only review of the claim can be under the plain error rule. See People v. Breedlove, 213 Ill. 2d 509,

517 (2004).  A reviewing court can consider unpreserved errors under the plain error rule when either:

> "(1) [T]he evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence.  In the first instance, the defendant must prove 'prejudicial error.'  That is, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him.  *** In the second instance, the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process."  People v. Herron, 215 Ill. 2d 167, 187 (2005).

Considered as an attempt to lessen the State's burden of proof, the State's comment was not error at all.  The State acts improperly if it seeks in its comments and arguments to reduce its burden of proof to a pro forma detail or to shift the burden to the defendant.  People v. Guajardo, 262 Ill. App. 3d 747, 764 (1994).  However, recent authority holds that merely arguing that proof beyond a reasonable doubt is a readily surmountable burden does not violate this prohibition.  For instance, courts allow prosecutors to argue that defendants every day are properly being found guilty beyond a reasonable doubt.  People v. Bryant, 94 Ill. 2d 514, 523 (1983); Guajardo, 262 Ill. App. 3d at 764-65.  These more recent cases are contrary to the holding in People v. Martinez, 76 Ill. App. 3d 280, 285 (1979), cited by defendant, which held that such an argument reduces the burden of proof to a minor detail.  Like the assertion that the burden is readily surmounted, the assertion that reasonable doubt "is not 100%" did not shift the burden to defendant or make the burden a minor detail.

Considered as an attempt to define "reasonable doubt," the State's comment does not fall under the plain error rule.  Under the first prong of the plain error standard, there was no prejudicial

error because the evidence was not particularly closely balanced. Cherie's testimony was significantly corroborated. Aurora police arrived at her house in response to her 911 call. Moisa noted that the house had a splintered door frame, and a photograph showed footprints on the door. Further, the evidence indicates that the Batavia police could find and arrest defendant where they did because he was driving where one could expect him to be found if he had left Cherie's house. Turning to the second prong of the standard, the error was not so serious as to affect the fairness of the trial. Our courts have uniformly held that, although it is improper for the State to define "reasonable doubt," if the definition does not mislead the jury, it does not make the trial unfair. For instance, in People v. Roe, 228 Ill. App. 3d 628 (1992), the State told the jury:

" 'Well, ladies and gentlemen, the standards that you are here today on is not a standard of beyond all doubt. It's not a standard of beyond any doubt. It's not a standard of beyond a shadow of a doubt, not 100 percent proof positive, but it's a standard of beyond a reasonable doubt. You have to have reasonable doubt, and you will always have doubts in this trial when you find him guilty or not guilty. You will always have doubts about whether you are making the right decision. You will have to accept that *** you will always have some doubts.' " (Emphasis in original.) Roe, 228 Ill. App. 3d at 637.

The court found that these remarks did not deprive the defendant of a fair trial. Roe, 228 Ill. App. 3d at 637. The remarks in Roe are far more extensive than the brief comment here. The comment thus does not qualify for consideration under either prong of the plain error standard.

Accordingly, defendant was not prejudiced by the lack of a verbatim transcript regarding this argument. The bystander's report sufficiently apprised us of the nature of the comment such that we were able to conduct effective review. Our conclusion would be the same had the prosecutor stated

something similar, such as "the State does not have to prove its case with 100% certainty." Roe makes clear that such comments do not amount to reversible error.

As a final matter, defendant contends that he is entitled, under section 110--14(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110--14(a) (West 2004)), to a credit of $5 a day against his fine for the two days that he spent in jail before trial. The State agrees, and, as the law and facts are not in dispute, we amend the judgment to reflect that defendant shall receive a credit of $10 against his fine.

### III. CONCLUSION

For the reasons given, we affirm as modified the judgment of the circuit court of Kane County.

Affirmed as modified.

BOWMAN and CALLUM, JJ., concur.