# Illinois Official Reports

## Appellate Court

---

**People v. Threatte, 2017 IL App (2d) 160161**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL THREATTE, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0161 |
| Rule 23 order filed<br>Motion to publish granted<br>Opinion filed | June 19, 2017<br><br>August 8, 2017<br>August 8, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 15-CM-4283; the Hon. Charles D. Johnson, Judge, presiding. |
| Judgment | Affirmed and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Jessica W. Arizo, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Michael G. Nerheim, State's Attorney, of Waukegan (Patrick Delfino, Lawrence M. Bauer, Aline B. Dias, and Ivan O. Taylor, Jr., of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

PRESIDING JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices Hutchinson and Birkett concurred in the judgment and opinion.


**OPINION**

¶ 1          Defendant, Michael Threatte, was charged with domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2014)). In the middle of his jury trial, the prosecutor became ill, and the trial court declared a mistrial. Defendant moved to bar reprosecution, on double-jeopardy grounds. The Lake County trial court denied the motion. Defendant appeals, contending that no manifest necessity existed to declare a mistrial, as other prosecutors were available to take over the case. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3          The record reveals that, when the case was called for trial, a jury was impaneled and sworn. The parties gave their opening statements, and the prosecutor, Britta Girmscheid, began questioning the complaining witness. Approximately halfway through the direct examination, Girmscheid requested a recess because she was feeling ill. She was unable to continue, and the court adjourned for the day at about 4 p.m.

¶ 4          The following day, Girmscheid was not in court. Prosecutors Stephen DeRue and Donald Tyler were present. They told the court that Girmscheid was very ill and could not make it to court. The judge remarked that, if she had what he himself had had the prior weekend, norovirus, it was serious.

¶ 5          DeRue requested a 24-hour continuance. The defense objected to any continuance. The court noted that the attorneys had informally discussed the possibility of a two-hour continuance to allow one of the other prosecutors to familiarize himself with the case but decided against it. The court noted that it was considering "the prejudice to either side of granting or denying a continuous [*sic*], the inconvenience to the jurors, and to the overall court system in the administration of case load." After weighing those factors, the court declined to grant a continuance, even for a short time.

¶ 6          DeRue informed the court that he and Tyler were not prepared to take over the case at that point. DeRue asked the court to declare a mistrial. Defendant objected to a mistrial, arguing that Tyler could step in and finish the case. The court declared a mistrial, over defendant's objection.

¶ 7          Defendant then filed a motion to dismiss on double-jeopardy grounds. He argued that "the Court abused its discretion in granting the State's motion for a mistrial instead of granting the State's requests for either a 24-hour or even two-hour continuance."

¶ 8          At a hearing on the motion, Girmscheid recalled that she was not in court on Tuesday, the second scheduled day of the trial, and did not come to work on Wednesday either, so that a 24-hour continuance would not have allowed her to resume the trial. The court stated that it was aware of the alternatives and thoroughly considered them before declaring a mistrial. The court noted its concern that "[t]he jury, which had already been here for all of one day and part

of the morning of a second day, would have had to sit doing nothing for at least two more hours on top of the two hours or so they had already been present the second day without ever even having come into the courtroom." A 24-hour continuance would have required the jurors to spend an entire day waiting and would possibly lead to "mischief" by the jurors. The court denied the motion, and defendant timely appeals.

¶ 9                                                    II. ANALYSIS

¶ 10    Defendant contends that the trial court erred by denying his motion to dismiss. He contends that there was no manifest necessity for declaring a mistrial because other options were available.

¶ 11    The fifth amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend. V. These same principles are embodied in the Illinois Constitution. See Ill. Const. 1970, art. I, § 10. These provisions are based on the notion that the State, with all of its resources, should not be allowed multiple attempts to convict a person of an alleged offense. *People v. Bagley*, 338 Ill. App. 3d 978, 980-81 (2003).

¶ 12    The protection against double jeopardy attaches after the jury is selected and sworn. See 720 ILCS 5/3-4(a)(3) (West 2014); *Bagley*, 338 Ill. App. 3d at 981. A defendant who requests or consents to a mistrial is presumed to have deliberately elected to forgo a decision on his or her guilt or innocence before the jury seated at that time. *People v. Dahlberg*, 355 Ill. App. 3d 308, 312 (2005). However, where the court, acting without the defendant's consent, declares a mistrial, the court necessarily deprives the defendant of his valued right to have a particular jury decide his fate. *Id.* This does not necessarily preclude a second trial, because a defendant's right to have his trial completed by a particular jury must in some instances yield to the public's interest in fair trials designed to end in just judgments. *Id.* "When the court declares a mistrial without the defendant's consent, the State should be allowed to retry the defendant only if there was a manifest necessity for declaring the mistrial." *Id.* "Accordingly, reprosecution of a defendant following the declaration of a mistrial is constitutionally permissible if (1) the mistrial was attributable to the defendant by virtue of his motion or consent; or (2) the mistrial was warranted by 'manifest necessity.' " *Id.* (quoting *People v. Hill*, 353 Ill. App. 3d 961, 967-68 (2004)).

¶ 13    Essentially, in deciding if a manifest necessity exists, the trial court must balance the defendant's interest in having the trial completed in a single proceeding, reserving the possibility of obtaining an acquittal before that "particular tribunal," against the strength of the justification for declaring a mistrial rather than attempting to continue the trial to a verdict. *People v. Street*, 316 Ill. App. 3d 205, 211 (2000) (citing 5 Wayne R. LaFave *et al.*, Criminal Procedure § 25.2(c), at 654 (2d ed. 1999)). Deciding whether a manifest necessity warrants a mistrial should be based on the facts of each individual case. On review, we may consider several factors, including whether (1) the difficulty was the product of the actions of the prosecutor, defense counsel, or trial judge, or was the product of events over which the participants lacked control; (2) the difficulty could have been intentionally created or manipulated by the prosecution to strengthen its case; (3) the difficulty could have been "cured" by an alternative that would have preserved the trial's fairness; (4) the trial judge actually considered the alternatives to a mistrial; (5) a subsequent conviction would be subject to reversal on appeal; (6) the trial judge acted in the heat of the trial confrontation; (7) the trial

judge's decision rested on an evaluation of the demeanor of the participants, the "atmosphere" of the trial, or any other factors that similarly are not amenable to strict appellate review; (8) the trial judge granted the mistrial solely for the purpose of protecting the defendant against possible prejudice; (9) the evidence the State presented, prior to the mistrial, suggested a weakness in its case (*e.g.*, a witness failed to testify as anticipated); (10) the jurors had heard enough of the case to formulate some tentative opinions; (11) the case had proceeded so far as to give the prosecution a substantial preview of the defense's tactics and evidence; and (12) the composition of the jury was unusual. *Id.* Our review is for an abuse of discretion. *People v. Campos*, 349 Ill. App. 3d 172, 175 (2004).

¶ 14    The parties acknowledge that the majority of the *Street* factors do not apply here. They focus primarily on the third and fourth factors: whether alternatives were available and the extent to which the court actually considered those alternatives.

¶ 15    Taking the second point first, the court stated that, after balancing "the prejudice to either side of granting or denying a continuous [*sic*], the inconvenience to the jurors, and to the overall court system in the administration of case load," it concluded that even a short continuance was inadvisable. Moreover, DeRue stated that he and Tyler were not prepared to take over the case at that point.

¶ 16    The court thus did consider the possible alternatives and concluded that they were not practical. Defendant seems to argue that the court did not devote enough time to considering the alternatives, but we are aware of no case prescribing a particular amount of time that must be devoted to the subject. The concern in cases such as *Dahlberg* was that the court not declare a mistrial as the first and only option without giving the defendant an opportunity to respond. *Dahlberg*, 355 Ill. App. 3d at 313. That type of hasty decision did not occur here, as the court sought defendant's input and discussed with counsel possible alternatives.

¶ 17    Moreover, the court referred to an earlier, off-the-record discussion during which the court and the attorneys discussed the matter, and obviously, we do not know what factors were discussed at that time. Generally, to support a claim of error on appeal, the appellant has the burden to present a sufficiently complete record. *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). Absent such a record, we presume that the trial court's order conforms to the law and has a sufficient factual basis. *Id.* Here, without knowing what was said during the off-record discussion, we must at least presume that the court adequately considered possible alternatives.

¶ 18    Defendant's principal point is that the trial court abused its discretion by ordering a mistrial when it could have resolved the situation by ordering a relatively short continuance. This is the opposite of the position he took in the trial court, where he objected to *any* continuance. "Under the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error." *People v. Carter*, 208 Ill. 2d 309, 319 (2003). To permit a defendant to use the exact ruling or action he procured as a vehicle for reversal on appeal "would offend all notions of fair play" (*People v. Villarreal*, 198 Ill. 2d 209, 227 (2001)) and "encourage defendants to become duplicitous" (*People v. Sparks*, 314 Ill. App. 3d 268, 272 (2000)). Here, defendant objected to any continuance, even for a few hours, but now argues on appeal that granting a continuance is precisely what the trial court should have done. Defendant is not entitled to simply change positions this way.

¶ 19    Defendant objected to both a continuance and a mistrial, apparently taking the position that the only viable option was for DeRue or Tyler to take over the case immediately, without any

preparation whatsoever. We are aware of no case, and defendant cites none, holding that the double-jeopardy clause entitles a defendant to force an unprepared prosecutor to take over the case immediately.

¶ 20 Even apart from that, defendant's argument that a continuance was a better option is essentially based on speculation. Girmscheid's condition was unknown. It was also unknown whether Tyler, or any other prosecutor from the office, would have been available to take over the case in the foreseeable future. Thus, the jury, which was told that the case was expected to last one or two days and which had already been in court for two days, would have had to return the following day, with no guarantee that the State would be ready to proceed. We do not know whether the court, the prosecutors, or even defense counsel had other matters on their schedules that would have precluded resuming the trial. Thus, we cannot say based on this record that the court abused its discretion.

¶ 21 The parties do not cite, and our research has not disclosed, any Illinois case addressing this precise issue: whether a manifest necessity for a mistrial exists where the prosecutor becomes seriously ill in the middle of a trial. Courts from other jurisdictions that have considered the issue generally hold that a mistrial is proper where the prosecutor would be absent for a lengthy period and no other prosecutor would be able to step in and resume the trial within a reasonable period. See *State v. Anderson*, 988 A.2d 276, 286-87 (Conn. 2010) (collecting cases).

¶ 22 In any event, we note again that the record does not fully reveal the scale by which the trial court balanced the competing interests and concluded that a mistrial was necessary. We do not know how long Girmscheid was expected to be indisposed or when another prosecutor would be available to take over the case. In the absence of a positive indication in the record and knowing that at least some discussion took place off the record, we must presume that the court's balancing of these factors was proper. *Webster*, 195 Ill. 2d at 432.

¶ 23                                III. CONCLUSION

¶ 24 The judgment of the circuit court of Lake County is affirmed, and the cause is remanded. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2014); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 25 Affirmed and remanded.