2022 IL App (1st) 211505

No. 1-21-1505

Opinion filed May 13, 2022

SIXTH DIVISION

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* M.M., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19 JA 942 |
| | ) | |
| T.S., | ) | The Honorable |
| | ) | Levander Smith, Jr., |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Justices Harris and Mikva concurred in the judgment and opinion.

**OPINION**

¶ 1        In the instant appeal, T.S., an incarcerated parent,[1] claims that her due process rights

were violated when she was expelled from a remote Zoom dispositional hearing, at which the

trial court ultimately found her unable and unwilling to care for her minor child, M.M., and

adjudged M.M. a ward of the court. The trial court expelled T.S. for being too disruptive during

_____

[1] The mother was detained at Cook County Jail awaiting trial.

the proceeding, although the Zoom host had repeatedly muted T.S.'s microphone at the direction of the trial court.

¶ 2 On appeal, T.S. asserts that the trial court (1) improperly removed her from the hearing in violation of her constitutional and statutory rights to due process and (2) failed to sufficiently inquire into her *pro se* claim that her counsel was ineffective, thereby requiring a remand for a *Krankel* inquiry. *People v. Krankel*, 102 Ill. 2d 181 (1984).[2] T.S. also requests that we direct the trial court to find, at a new dispositional hearing, that she is *not* unwilling to parent.[3]

¶ 3 T.S. argues that there was no showing of unrelenting vile, threatening, or abusive language by her to justify her exclusion from the hearing. As such, she claims that she was denied the constitutional right to a fundamentally fair proceeding and the statutory right to be present. The State, however, contends that, because the conduct at issue "occurred primarily during an off-the-record recess," a bystander's report is needed in order for this court to assess the conduct in question. The State argues that, without it, the record is incomplete, and we cannot rule in her favor.

¶ 4 A party, such as T.S., has a right to appeal "an adjudication of wardship of the court under Section[ ] 2-22" of the Juvenile Court Act of 1987 (Act). 705 ILCS 405/1-5(3) (West 2020). Section 2-22 of the Act governs dispositional hearings, such as the one at issue in the instant appeal. 705 ILCS 405/2-22 (West 2020) ("Dispositional hearing"). T.S. filed a notice

---

[2] In *Krankel*, 102 Ill. 2d at 189, the supreme court remanded the case before it to the trial court so that the trial court could hold a hearing on the defendant's *pro se,* posttrial claim of ineffective assistance of counsel. After *Krankel*, a whole new "common-law procedure *** developed" to "govern[ ] a *pro se* posttrial claim alleging ineffective assistance of trial counsel." *People v. Jackson*, 2020 IL 124112, ¶ 95. "An abundance of decisions" from both the supreme court and the appellate courts has " 'contributed to the refinement of,' " what has come to be known as, " 'the *Krankel* procedure.' " *Jackson*, 2020 IL 124112, ¶ 97 (quoting *People v. Roddis*, 2020 IL 124352, ¶ 37. T.S. asks us to remand to permit such a procedure.

[3] The public guardian states in its appellate brief: "The public guardian is *not* asking this Court to affirm the trial court's finding that the mother [T.S.] is unwilling" to parent. (Emphasis added.)

of appeal on November 16, 2021, within 30 days of the dispositional order entered on October 22, 2021. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). Thus, we have jurisdiction to hear this appeal. [4]

¶ 5    For the reasons explained below, we agree that the record is sufficient for our review, and we thereby reverse and remand for a new dispositional hearing but decline to address her ineffective assistance claim at this time. We also decline T.S.'s request to order that she is "not unwilling" as it would require us to prejudge the outcome of the new dispositional hearing.

¶ 6                                   BACKGROUND

¶ 7    The case at bar concerns a girl, M.M., who was born on February 11, 2017, to T.S., the appellant in this case. M.M.'s father is not a party to this appeal. At an adjudication hearing on August 6, 2021, the juvenile court found that M.M. was neglected because she was exposed to an injurious environment and abused because she was at substantial risk of physical injury. The evidence established that both of M.M.'s parents abuse alcohol, which leads them to argue and injure each other. At a remote Zoom dispositional hearing on October 22, 2021, the trial court found that T.S. was unable and unwilling to care for her child. The court made M.M. a ward of the court and placed her under the guardianship of the Department of Children and Family Services (DCFS).Since T.S.'s claims arise from events at the dispositional hearing, we describe those events in detail below.

---

[4] Although no party has raised this as an issue, we observe that, pursuant to Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), this court was required to issue our decision within 150 days after the filing of the notice of appeal, except for good cause shown. In this appeal, we granted multiple extensions of time to both sides for the filing of their briefs. While these extensions delayed the filing of our decision, the parties' requests in each instance were made for legitimate reasons and not to hinder the timely resolution of this appeal. Thus, good cause was shown. *In re. J.V.*, 2018 IL App (1st) 171766, ¶ 3.

¶ 8        The transcript of the dispositional hearing begins with the trial court stating: "Let's go on the record." After the attorneys identified themselves, T.S.'s assistant public defender (APD) stated that he was "expecting her from Cook County" jail. Someone who is identified on the record only as "Madam Sheriff" said: "She's here. She's waiting." After T.S. identified herself on the record, the trial court informed her: "Your attorney *** is here, okay, on the screen. I just want[ed] you to know."

¶ 9        The trial court observed that the father appeared to be having "technical difficulty" with the Zoom technology. The trial court noted that, for a moment, the father appeared frozen on the screen and the court was not sure that the father could hear the court. The father's APD suggested that the father "just do the call-in," and the trial court agreed.

¶ 10        The court noted that the foster mother had appeared "on the screen" and asked her to turn up the volume because she could not be heard. After the foster mother turned up her volume, the court noted that her volume was still faint, and the court asked the court reporter if the reporter could hear her. The reporter stated that her voice was still faint. After the foster mother informed the court that the foster father was unable to attend, the court reporter interrupted, asking: "What was the first name of the other—." The trial court then spelled the foster father's first name.

¶ 11        After the court finished spelling the foster father's name, M.M.'s mother stated: "I need a breakout room with my lawyer real quick." The trial court responded: "Hold on. Hold on, *** Hold on, please. Hold on." The trial court noted that M.M.'s father still did not seem to be able to hear the proceedings and the court asked T.S.'s APD "what's going on with your client?" When the APD replied that T.S. had requested a break-out room, the trial court asked: "And you?" T.S.'s APD responded that, if his client wanted a break-out room, then so did he.

The APD argued the court would not lose any time because the court was still waiting for M.M.'s father.

¶ 12    The trial court asked the Zoom host, who was the regional counsel of DCFS, if she could accommodate T.S.'s request for a break-out room, and the host said that she could. The trial court noted that it was then 1:56 p.m. and that they would be back on the record at 2:05 p.m. At which point, a short recess was held.

¶ 13    The recess ended with the trial court stating: "Go back on the record." The trial court then confirmed that, during the short recess, T.S., the mother, had had an opportunity to confer with counsel, and the court also asked whether the father was able to join the proceeding:

> "THE COURT: Okay. After the parties have had an opportunity to confer, [the mother's APD] with his client. And [the father's APD], your client is he able to get on the screen or on the record at this point?
>
> Somebody please mute the mother again, and if she's come [*sic*] back without invitation from this court, remove her from this courtroom, and we will proceed.
>
> Now, if you cannot control yourself, ma'am, you will be removed."

This was the first time on the record that the trial court told T.S. that she would be removed if she interrupted the proceeding.

¶ 14    Next, the trial court confirmed that the father was "coming across loud and clear," and that the father was participating by phone instead of by computer "due to some technical difficulties." The trial court advised all parties present that "in the State of Illinois it is illegal to record these hearings without the consent of all participants, and [the court] did not consent." The trial court further warned everyone that "the only person that may record the hearings is the Official Court Reporter, who is present."

¶ 15       The trial court summarized for the record what had occurred off of it. It was during this summary that the court ordered T.S. removed from the proceeding:

"THE COURT: [T]here was discussion off the record. The mother *** who's incarcerated and represented by [her APD], stated to this court that she wanted alternative counsel, because there were documents that she felt should have been admitted at adjudication. And [her APD] stated that[,] in his professional opinion, he had reviewed the documents and did not think that in light of the evidence presented by the State, which this court found to be a preponderance of evidence that it would have made any positive impact on the mother's case.

So this court is at this point, despite the mother's request, denying the request right now but invited the mother to in the future, if she feels that her representation is not appropriate or competent, to bring it up to this court in the appropriate fashion, which is generally by way of a motion. And—

[THE MOTHER]: I've got that.

THE COURT: She's to discuss that with her attorney, who will remain, the office of the Public—

[THE MOTHER]: I—

THE COURT: Defender, through [her APD]—remove the mother at this point, please. Remove her. Thank you."

¶ 16       The trial court then stated for the record its reasons for ordering the mother removed:

"THE COURT: The court has also advised the mother several times while we were off the record that if she continued to interrupt this court, that she would be removed.

She has already been silenced in terms of her microphone being muted more than once, and she continued to interrupt the court, so she is hereby removed.

All right. We will proceed with the dispositional hearing today."

¶ 17 The mother's APD stated "Your Honor, for the record—," when he was interrupted by the trial court who then provided an additional reason for denying the mother's request for alternative counsel:

"THE COURT: What the court was stating, the court found that [the mother's APD] had made a legal determination and that he was not operating contrary to the best interest of his client, which as he knows would have not been—would not have comported with the Rules of Professional Practice, so the mother, whatever it was that she was doing or trying to get before this court, she did not bring it to the court in the appropriate fashion anyway, so that was an additional reason."

The record does not indicate what documents the T.S. was trying to bring to the attention of the trial court. The trial court indicated that it did not know the nature of the documents when it stated, "whatever it was that she was *** trying to get before this court."

¶ 18 After providing its "additional reason," the trial court asked T.S.'s APD if it had accurately summarized what had occurred off the record. T.S.'s APD confirmed that the court's summary was accurate and used this opportunity to object to the court's removal of his client, stating: "I think you have stated it accurately. I would just object to going forward without my client being present." In response to the APD's objection, the trial court further stated:

"THE COURT: All rightie. The mother was provided with the opportunity several times to proceed, but she has chosen to disrupt the proceedings, and I am not going to

7

make [M.M.] wait, because her mother refuses to contain herself. So with that having been said, [the proceeding] continues."

¶ 19    The dispositional hearing proceeded to the evidentiary phase, during which the court went off the record several times for various reasons. In closing argument, the State asked the court to find that T.S. was "unable *** only," but that the father was both unable and unwilling to parent the child. The assistant public guardian (APG) who represented the minor joined the State in asking for a finding that T.S. was unwilling only. Similar to the State and the APG, T.S.'s APD requested a finding that his incarcerated client "is unable only at this time."

¶ 20    With respect to T.S., the trial court found:

"THE COURT: [T]he minor is adjudged a ward of the court, it being in the best interest and welfare of the minor and that of the public.

The mother in this case is found to be unable and unwilling to care for protect, train and discipline the minor."

The trial court found that it was in the best interest of the minor to remove the minor from the custody of the parents, and it appointed a DCFS administrator "as the custodian and guardian of the minor with the right to place the minor and all of the rights pursuant thereto."

¶ 21    Before advising the parents of their appellate rights, the trial court stated: "I need the father to listen, as the mother is no longer on the screen, but her attorney is here." The trial court then stated that it was advising "each parent" of his or her appellate rights. After stating the parents' appellate rights, the trial court instructed the father to unmute himself and also threatened to remove him from the proceeding:

"THE COURT: Do you—first of all, unmute yourself, please, ***.

[THE MINOR'S APG]: I think on the phone is it star—what is it?

THE COURT: Star 6 ***. Press star 6 to unmute yourself, please. *** Are you there? Please raise your right hand. I cannot see you, because you're participating by phone. Let me know when your right-hand is raised.

[THE FATHER]: I don't agree with your situation here.

THE COURT: I am not asking you—*** please don't have me have you removed as well. Just raise your right hand, and let me know when your right hand is raised, sir."

The trial court asked the father if he understood his appellate rights, and the father replied: "Not entirely, no." The trial court then advised him to discuss those rights with his attorney after the proceeding. After this advice, the trial court threatened again to remove the father:

"THE COURT: For further clarification—sir, *** I will have you removed as well. If you do not—and that is your last warning, sir. Now, you may mute yourself again at this time.

You can discuss this further with your attorney off the record after these proceedings. We are going to continue at this point with or without you, so please mute yourself.

[THE FATHER]: Okay. Go on.

THE COURT: Please mute yourself.

[THE FATHER]: How?

[THE FATHER'S APD]: Star 6.

THE COURT: [Father's APD], please speak with your client before he appears in this courtroom again about his decorum in this courtroom."

The transcript does not disclose what the father did or said before the trial court said that it could remove him as well. T.S. filed a timely notice of appeal on November 16, 2021, and this appeal followed.

¶ 22                                             ANALYSIS

¶ 23            T.S. argues that her removal from the dispositional hearing violated her due process and statutory rights to be present. "A parent has a fundamental due process right to the care, custody and control of his or her children ***." *In re Andrea F.*, 208 Ill. 2d 148, 165 (2003). As a result, all juvenile court proceedings must satisfy "[t]he basic requirements of due process and fairness." *In re J.S.*, 272 Ill. App. 3d 219, 222 (1995). In our state, section 1-5(1) of the Act codifies certain rights that protect a parent's due-process interest in the custody of his or her children. *In re K.C.*, 323 Ill. App. 3d 839, 849 (2001). Section 1-5(1) guarantees, among other things, that every parent who is a party respondent has "the right to be present [and] to be heard" and "the right to be represented by counsel" at proceedings under the Act. 705 ILCS 405/1-5(1) (West 2018). As the State notes in its brief to this court, " '[d]ue process is flexible and calls for such procedural protections as the particular situation demands.' " *In re R.D.*, 2021 IL App (1st) 201411, ¶ 19 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)).

¶ 24            To the extent that the issues on this appeal require us to interpret what the Act requires, our review is clearly *de novo*. *Thornley v. Board of Trustees of the River Forest Police Pension Fund*, 2022 IL App (1st) 210835, ¶ 15. The Public Guardian argues that our review is *de novo* and cites in support *In re J.V.*, 2018 IL App (1st) 171766, ¶ 191 (an appellate court reviews *de novo* whether a mother was denied due process in a hearing that determined her parental fitness). In contrast, T.S. argues that we review only for an abuse of discretion but cites in support only federal criminal cases. The State agrees with T.S. concerning the standard of

review. We are persuaded by the public guardian's cite to *In re J.V.*, in which this court found that a trial court's finding of parental unfitness is reversed only if it is against the manifest weight of the evidence,[5] but that we review *de novo* the issue of whether a parent received due process. *In re J.V.*, 2018 IL App (1st) 171766, ¶¶ 191, 236. As noted above, in our state, a statute dictates what due process requires, and statutory interpretation is "always" governed by *de novo* review. *People v. Kohl*, 364 Ill. App. 3d 495, 499 (2006) ("a trial court's interpretation of a statute" is "entitled to no deference"). However, under either standard of review, our conclusions would be the same.

¶ 25    Prior to addressing the issue of whether T.S. was rightly removed from the proceeding, we must first address the State's contention that we do not have a sufficient record to decide the matter. T.S. asserts that the trial court's on-the-record description of the off-the-record events and justification for expelling T.S. created a sufficient record.[6] However, the State in its responding brief claims, repeatedly, that T.S.'s misconduct "occurred primarily during an off-the-record recess" and that this court cannot decide her claim without a bystander's report describing her off-the-record conduct. Since T.S. did not provide a bystander's report, the State argues that the record before us is incomplete and, thus, we cannot rule in her favor.

¶ 26    For reasons explained in more detail below, we do not find persuasive the State's argument that the appellate record is incomplete because it does not contain material that the trial court specifically ruled would be off of it and that the trial court later summarized on the record.

---

[5] A trial court's "determination is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the determination is unreasonable, arbitrary, or not based on the evidence presented." *In re J.V.*, 2018 IL App (1st) 171766, ¶ 164.

[6] The trial court stated that it was expelling T.S. primarily because she had repeatedly unmuted herself and interrupted the court. However, the Zoom host had muted T.S., when instructed to do so by the trial court.

¶ 27        The State argues, first, that the trial court removed T.S. primarily for conduct that occurred off the record and that, since T.S. did not provide a bystander's report describing this alleged off-the-record conduct, our record is incomplete and we, therefore cannot consider her claim. We agree that the substance of off-the-record conferences and proceedings may be later placed on the record through the means of a bystander's report. *Allen v. Sarah Bush Lincoln Health Center*, 2021 IL App (4th) 200360, ¶ 84 (the substance of an off-the-record jury instruction conference was "set forth in a bystander's report"); *Bennett v. GlaxoSmithKline LLC*, 2020 IL App (5th) 180281, ¶ 34 (the appellate court noted the failure to memorialize off-the-record, in-chambers proceedings in a bystander's report); *Tirado v. Slavin*, 2019 IL App (1st) 181705, ¶ 26 (appellants could have utilized a bystander's report to memorialize "events that occurred during the recess"). Pursuant to Illinois Supreme Court Rule 323(c) (eff. July 1, 2017), when "no verbatim transcript" is "obtainable," a party "may prepare a proposed report of proceedings from the best available sources, including recollection." A report may include any "proceedings that the party submitting it desires to have incorporated in the record on appeal." Ill. S. Ct. R. 323(a) (eff. July 1, 2017).

¶ 28        In her reply brief, T.S. argues that the trial court's statement of reasons was complete but that, if this court finds the State's argument persuasive, we have the power, pursuant to Illinois Supreme Court Rule 366(a)(3) (eff. Feb. 1, 1994), to order a bystander's report. Rule 366(a)(3) provides, in relevant part, that "the reviewing court may, in its discretion, and on such terms as it deems just *** permit the record to be amended *** by adding matters that should have been included." Ill. S. Ct. R. 366(a)(3) (eff. Feb. 1, 1994); see also Ill. S. Ct. R. 329 (eff. July 1, 2017) (material omissions to the record may be corrected by the reviewing court).

¶ 29    Although an appellant has the burden to provide a sufficiently complete record to support her claims, an appellee also has the burden to supplement the record if it believes our record is inadequate to support its own claims. *People v. Vernón*, 396 Ill. App. 3d 145, 151 (2009); *People v. Majka*, 365 Ill. App. 3d 362, 369-70 (2006).

¶ 30    As previously stated, we are not persuaded by the State's argument that the appellate record is incomplete because it does not include material that the trial court specifically deemed would be off the record and that the trial court summarized on the record. *Majka*, 365 Ill. App. 3d at 369-70 ("despite the burden on the appellant to provide a record complete enough for review, the appellee cannot force the appellant to provide an exhaustive record by speculating that a partial record is misleading"). Parties often speak and act differently when the trial court states that their words and actions will be off the record. That is part of the point of going off the record in the first place. In the case at bar, once back on the record, the trial court summarized what had taken place off the record, thereby placing the key facts on the record—deliberately putting those facts before us, the reviewing court. If the State believed that the trial court had erred by providing an incomplete summary, it was up to the State to supplement the record to support its allegation of error by the trial court in providing a summary.[7] Thus, we do not find persuasive the State's claim that the record before us is insufficiently complete to adjudicate T.S.'s appellate claims. *Tirado*, 2019 IL App (1st) 181705, ¶ 26 (claim is reviewable, despite the absence of a "bystander's report of the events that occurred during the recess," where "the judge and the attorneys for the parties recount[ed]" on the record "the circumstances that occurred off the record"); *United Services Auto Ass'n v. Gobenciong Selina*,

_____

[7] In addition, the trial court specifically forbid any recording of the proceeding, except for transcription by the court reporter.

2019 IL App (1st) 182275, ¶ 31 (although appellant did not provide bystander's report, the record was sufficient where "nothing in the record" indicated that the trial court "considered any basis for the sanction other than" what it stated on the record).

¶ 31 The State argues that T.S. is "ask[ing] this Court to assume that the absence of a record documenting her disruptive conduct during the court recess" means that her conduct was not sufficiently disruptive "to justify her removal." However, it is the State that is asking this court for an assumption. The State is asking this court to assume that the trial court's summary of events and its statement of reasons was incomplete, and this we decline to do.

¶ 32 The State cites various cases in which there was material missing from the record and the appellate court, therefore, ruled against the appellant. For example, in *People v. Threatte*, 2017 IL App (2d) 160161, ¶¶ 15-16, cited by the State, the trial court stated on the record that it had considered alternatives to declaring a mistrial. The appellate court noted that there had been an earlier, off-the-record discussion where the parties discussed the matter. *Threatte*, 2017 IL App (2d) 160161, ¶ 17. The appellate court concluded that, "without knowing what was said during the off-record discussion," it must presume that the trial court's statement was correct. *Threatte*, 2017 IL App (2d) 160161, ¶ 17. Similarly, in the case at bar, we presume that the trial court's statement summarizing the events that occurred off-the-record is correct. The State asks us to speculate that there would be something in a bystander's report, certified by the trial court, that would be different than the summary of events and justifications that were already provided by the trial court on the record before us. However, instead, we choose to rely on the trial court's stated reasons and summary of events. *Majka*, 365 Ill. App. 3d at 369-70 (mere "speculating" by the appellee cannot force the appellant to provide a more

exhaustive record); *People v. Davis*, 405 Ill. App. 3d 585, 600-01(2010) ("speculation" that a transcript or bystander's report would reveal errors is "insufficient").

¶ 33    Second, the State argues that the trial court's statement of events and reasons justified the complete removal of T.S. from attending and viewing the Zoom proceeding. Unlike the trial court in *Threatte*, the trial court in the case at bar did not state that it had considered possible alternatives. *Threatte*, 2017 IL App (2d) 160161, ¶¶ 15-16.

¶ 34    To recap, after the proceeding started, T.S. asked for a break-out room to confer with her attorney, which the trial court granted. Back on the record, the trial court almost immediately stated: "Somebody please mute the mother again, and if she's come [*sic*] back without invitation from this court, remove her from this courtroom, and we will proceed." The trial court then summarized for the record what had happened off-the-record, namely, that T.S. had asked for alternative counsel because there were documents which she wanted on the record that her counsel had not presented. The trial court stated that, off the record, it had denied her request, but it now "invited" her "in the future" to bring up any alleged inadequacies with her counsel's representation to its attention "by way of a motion." Indicating her understanding, T.S. replied: "I've got that." The trial court continued, noting that T.S.'s counsel was an APD. T.S. said "I—" and was immediately removed by the trial court. Stating its reasons for the removal, the trial court explained that it had "advised the mother several times while we were off the record that if she continued to interrupt this court, that she would be removed. She has already been silenced in terms of her microphone being muted more than once, and she continued to interrupt the court, so she is hereby removed."

¶ 35    The State argues that, with the Zoom format, only one person may speak at a time and that, by repeatedly speaking, T.S. disrupted the proceeding and prevented it from going

forward. However, the Zoom format also permits the host to mute all other participants besides the one permitted speaker and to allow other participants to "chat" with each other by typing messages to each other. The trial court's statement of reasons does not show that it explored any alternatives before expelling T.S. from viewing or attending the proceeding in any form. Its complete removal of T.S. from any form of attendance or viewing or contact with her attorney, without first exploring the other options provided by the Zoom format, did not comport with the statutory requirements of due process guaranteed by our state. 705 ILCS 405/1-5(1) (West 2018) (every parent who is a party respondent has "the right to be present [and] to be heard" and "the right to be represented by counsel").

¶ 36       It is hard for this court to imagine what an incarcerated and muted parent could have done to disrupt a Zoom hearing to the point where her remote attendance and viewing of the proceeding was no longer possible. T.S. was (1) incarcerated, (2) physically distanced from the trial court, (3) subject to a mute button, and (4) relying on a connection initialized and controlled by the authority at the jail.

¶ 37       It is imperative to note that we do not imply or intend any criticism of the trial court. On October 22, 2021, when this dispositional hearing was held, Zoom hearings were still in their infancy and we were all embarking into new territory, struggling to adapt a new platform to due process concerns. In the case at bar, the transcript discloses that practically everyone at the hearing was having difficulties navigating the Zoom technology. The sheriff had to inform the mother's APD that the mother was, in fact, present, after the APD stated that he was still waiting for her. In turn, the court informed the mother that her APD was present, suggesting that the mother would not have known this fact without being told. The court noted how faint the foster mother's voice was, and the court reporter had to interrupt when she could not hear

what the foster mother said. The court was unsure if the Zoom host could accommodate a request for a break-out room. M.M.'s father had repeated difficulties accessing the hearing on his computer and so was instructed to call in on his phone, although this limited his access to audio only. The father also had no idea how to mute himself, until he was specifically instructed what to press. Like the mother, the father was admonished repeatedly with the threat of being removed from the proceeding. The mother's APD had difficulty interjecting with an objection to the mother's absence and had to try twice in order to place his objection on the record. Although the father was told exactly how to mute himself, there is no indication that the mother was provided with this information or that she knew how to mute herself or that she even could, in light of the fact that the sheriff controlled her access. After reviewing this particular transcript, which reveals that almost every participant was struggling with the new technology, equity requires that we remand for a new dispositional hearing.

¶ 38    While appellate courts have repeatedly endorsed the use of Zoom proceedings in termination cases during the COVID-19 pandemic, we have done so because the trial courts in those cases took measures to ensure that the rights of the parent to be present and to confer with counsel were safeguarded. *In re Es. C.*, 2021 IL App (1st) 210197, ¶¶ 9, 28 (affirming a Zoom parental termination where the trial court safeguarded the parent's due process rights by providing her with regular and frequent opportunities to confer with counsel in breakout rooms); *In re R.D.*, 2021 IL App (1st) 201411, ¶¶ 8, 15 (affirming Zoom parental terminations where respondents received " 'every opportunity' " to confer with counsel and could view and hear the witnesses as they testified); *In re P.S.*, 2021 IL App (5th) 210027, ¶¶ 60, 63 (affirming a Zoom parental termination where the father was virtually present and was heard and the court repeatedly stopped the proceeding to permit him to confer privately with counsel). The case at

bar differs from our precedent in that the mother received only one opportunity to confer with counsel before being removed entirely from the proceeding. In sum, we take no issue with the fact that the hearing was remote via Zoom; our issue is strictly with the haste with which T.S. was removed from the remote hearing.

¶ 39     The public guardian argues that the result of the dispositional hearing would have been the same whether or not T.S. was present because it is undisputed that she was unable to parent while in jail. The public guardian argues that, as a result, any due process or statutory violation is harmless. We observe that the public guardian's argument would apply to any parent in jail. Thus, it is like saying that a parent has no right to be present when in jail. If the statute intended to carve out such a large exception, then it would have said so. It would have said that incarcerated parents have no right to be present, or to consult with an attorney, at a dispositional hearing. We will not read into a statute such a blanket exception that it does not contain. *Sigcho-Lopez v. Illinois State Board of Elections*, 2022 IL 127253, ¶ 27 (a court "will not read into" a statute "exceptions *** that the legislature did not express").

¶ 40     As a final matter, T.S. claims that the trial court should have made a more extensive inquiry during the dispositional hearing when she claimed that her attorney was ineffective. Since, for reasons explained above, we are reversing and remanding for a new dispositional hearing, her claim can be addressed at that time by the trial court, if she seeks to renew it on remand. T.S. also asks us to direct the trial court to find, at the new dispositional hearing, that she is *not* unwilling to parent. Appearing to agree somewhat with T.S., the public guardian states in its appellate brief: "The public guardian is *not* asking this Court to affirm the trial court's finding that [T.S.] is unwilling" to parent. (Emphasis added.) However, upon granting

T.S.'s request for a new hearing, we decline her request to prejudge the outcome of that hearing.

¶ 41                               CONCLUSION

¶ 42         For the foregoing reasons, we reverse and remand for a new dispositional hearing.

¶ 43         Reversed and remanded.

---

**No. 1-21-1505**

---

| | |
|---|---|
| **Cite as:** | *In re M.M.*, 2022 IL App (1st) 211505 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-JA-942; the Hon. Levander Smith Jr., Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | |

---

| | |
|---|---|
| **Attorneys for Appellee:** | |

---